## ROCKY MOUNTAIN FUEL CO. v. WHITESIDE.

### No. 1939.

Circuit Court of Appeals, Tenth Circuit.
March 18, 1940.

Rehearing Denied April 15, 1940.

Albert L. Vogl, of Denver, Colo. (Frank A. Wachob, of Denver, Colo., on the brief), for appellant.

G. Walter Bowman and Cass M. Herrington, both of Denver, Colo., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

By a written lease entered into on February 27, 1936, the Rocky Mountain Fuel Company [1] sublet to Standard Coal Mine, Inc.,[2] certain coal mining properties for a term of 15 years.

Paragraph 3 of the lease, in part, reads as follows: "Lessee hereby undertakes and agrees to occupy and hold hereunder, for the full term aforesaid, unless * * * sooner terminated pursuant to any of the provisions hereof * * *; and to so work the said mine or mines on said property so as to keep the entire property in a workmanlike mining condition, and to have such mine or mines in such condition at the termination of this lease."

Paragraph 4, as modified by a supplemental agreement, provided for a royalty of 25 cents per ton and a minimum royalty of $312.50 per month; and by paragraph 16 Standard agreed to pay all taxes levied against the demised premises during the term of the lease.

Paragraph 10 provided that the Standard might surrender the lease at the end of any calendar month during the term thereof upon six months' written notice to the Fuel Company.

Paragraph 7 gave the Fuel Company a first and prior lien upon all improvements, buildings, machinery, tools, implements, equipment, and property placed on the leased premises by Standard, as security for the payment of the royalties and the performance of the obligations and covenants of the lease.

On May 1, 1937, Standard filed its voluntary petition in bankruptcy and on May 3, 1937, was adjudicated a bankrupt. On June 8, 1937, the referee ordered the trus-

---

[1] Hereinafter referred to as the Fuel Company.

[2] Hereinafter referred to as Standard.

tee to surrender and disclaim the lease as of May 1, 1937. On May 14, 1937, the Fuel Company filed its claim in bankruptcy predicated on alleged breaches of provisions of the lease. At the hearing on the claim before the referee, it was amended. The items of the amended claim are as follows:

| | |
|---|---|
| (1) Royalties due on coal mined prior to bankruptcy (May 1, 1937) ......................... $ 911.39 | |
| (2) One year minimum royalties after May 1, 1937............... 3,750.00 | |
| (3) Taxes for one year after May 1, 1937 ......................... 552.58 | |
| (4) Power bill incurred prior to May 1, 1937..................... 188.00 | |
| (5) Taxes prior to May 1, 1937..... 184.19 | |
| (6) Transferring mules to pasture 6.50 | $ 5,592.66 |
| (7) Cost of electrification of certain equipment after May 1, 1937 ............................. 207.80 | |
| (8) Cost of preserving mine for six months .................... 8,638.73 | 8,846.53 |
| | $14,439.19 |

In the claim, the Fuel Company asserted a provision of the lease for liquidated damages and also a lien under the provisions of paragraph 7. On appeal, this court held that the Fuel Company was not entitled to enforce the provision for liquidated damages, but held that it was entitled to a lien and remanded the cause "with directions * * * to enter an order and decree adjudicating that the third paragraph of section 7 of said lease gave and granted to the lessor, The Rocky Mountain Fuel Company, a valid and enforceable equitable lien on all the property described in said third paragraph of section 7; that the court ascertain and fix from the proof adduced before the referee the amount of lessor's lien and direct sale of said personal property in satisfaction thereof, accounting to the trustee for any excess realized, but, if the amount realized be not sufficient to satisfy said lien in full, that said lessor share pro rata with general creditors for satisfaction of such deficiency of its claim."[3]

On the remand, the trial court allowed the first six items of the claim and disallowed items 7 and 8. The Fuel Company has appealed.

11 U.S.C.A. § 103, in part, reads as follows: "(a) Debts of the bankrupt may be proved and allowed against his estate which are * * * (4) founded upon an open account, or upon a contract express or implied; * * * and (7) claims for damages respecting executory contracts including future rents whether the bankrupt be an individual or a corporation, but the claim of a landlord for injury resulting from the rejection by the trustee of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall in no event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises plus an amount equal to the unpaid rent accrued up to said date: * * *."

The Fuel Company might have enforced its lien in a plenary suit but it chose to file a claim in bankruptcy and to submit itself to the summary bankruptcy jurisdiction and seek an enforcement of its lien in the bankruptcy proceeding.

We deem it unnecessary to determine whether items 7 and 8 were provable under subdivision 4 of § 63 sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 103, sub. a(4), prior to amendment of June 7, 1934, 48 Stat. 923.[4]

Under the amendment the Fuel Company was given the right to prove a claim for damages, including future rents. Remington on Bankruptcy, Vol. 2, § 793.-15. It elected to take advantage of the provisions of § 103, sub. a(7), and to assert a claim in bankruptcy for future rents, being the minimum royalties and taxes for the year from May 1, 1937, to April 30, 1938. It included in its claim items 7 and 8 predicated on the theory that the lease terminated at the expiration of six months from May 1, 1937, under the provisions of paragraph 10 thereof, and that during such period the trustee was obligated to keep the mine in workmanlike mining condition and to have it in such condition at the end of that period.

The Fuel Company cannot take advantage of § 103, sub. a(7), without submitting itself to the limitations thereof. The trustee did not elect to cancel the lease at the end of six months on written notice pursuant to the provisions of paragraph 10, but on June 6, 1937, elected to reject the lease as of the date of the filing of the petition in bankruptcy. Section 103,

---

3 Whiteside v. Rocky Mountain Fuel Co., 10 Cir., 101 F.2d 765, 770.

4 See In re Gallacher Coal Co., D.C. Ala., 205 F. 183.

sub. a(7), creates no new claim. It treats the adjudication as a breach of covenant and gives a provable claim by virtue of that breach. City Bank Co. v. Irving Trust Co., 299 U. S. 433, 440, 57 S.Ct. 292, 81 L.Ed. 324. The adjudication and the election of the trustee to reject the lease terminated the relation of landlord and tenant. In re Benguiat, D.C.Cal., 20 F. Supp. 504, 507; Remington on Bankruptcy, Vol. 2, § 793.15. By filing a claim for rents for one year from May 1, 1937, under § 103, sub. a(7), the Fuel Company elected to treat the lease as terminated on May 1, 1937. It could not elect to treat the lease as terminated as of the date of the filing of the petition in bankruptcy for the purpose of proving its claim under § 103, sub. a(7), for one year's rental, and as continuing for six months after the filing of the petition in bankruptcy for the purpose of asserting a claim under paragraph 3 of the lease.

The trustee might have given notice of cancellation to take effect at the expiration of six months from May 1, 1937, and treated the lease as in force and maintained the mine during that period. In that event, the liability for rent would have been limited to rental for six months. But the trustee did not so elect. On the contrary, he rejected and terminated the lease as of May 1, 1937, and the Fuel Company by asserting its claim under § 103, sub. a(7), acquiesced therein and predicated its claim thereon. The damages suffered all flow from a rejection of the lease by the trustee and are limited by the provisions of § 103, sub. a(7), to the rent reserved for the year next succeeding the date of the surrender of the premises.

It follows that items 7 and 8 were properly disallowed and the judgment is affirmed.