**In the Matter of W. T. GRANT COMPANY, Bankrupt.**

**Bankruptcy No. 75 B 1735.**

United States Bankruptcy Court, S. D. New York.

Aug. 4, 1981.

Weil, Gothshal & Manges, New York City, for trustee.

Levin & Weintraub, New York City, for landlord.

## MEMORANDUM AND ORDER

JOHN J. GALGAY, Bankruptcy Judge.

Claimant, Kimcoast of Eagleville, Inc. (Kimcoast), has initiated an action against the estate of.W. T. Grant Company (W. T. Grant), bankrupt. Kimcoast, as landlord, asserts a general unsecured claim in the sum of $57,197.22 that consists of a claim for unpaid pre-petition rent in the amount of $601.78 and a claim for damages in the amount of $56,595.44 for actual loss of rent during the 2¾ month period its retail store in Ridge Pike Plaza, Eagleville, Pennsylvania (the Premises) remained unlet after the Trustee for the estate of W. T. Grant (Trustee) had vacated and before the subsequent tenant commenced the term of its lease.

The Trustee objects that all use and occupation charges and the pre-petition rent in question have been paid by W. T. Grant, as debtor-in-possession, or by the Trustee. He further objects that Kimcoast has successfully mitigated any damages resulting from the rejection of its lease agreement dated August 31, 1970 with W. T. Grant (Grant Lease).

In accordance with Bankruptcy Rule 756, which makes Rule 56 of the Federal Rules of Civil Procedure applicable to these proceedings, the Trustee has moved for summary judgment disallowing and expunging the claim. Kimcoast has cross-motioned under the same Bankruptcy Rule for summary judgment allowing its claim, directing the Trustee to make a distribution, and disallowing the Trustee's motion.

This controversy has its roots in the aborted Chapter XI arrangement proceedings W. T. Grant commenced on October 2, 1975. By application dated April 7, 1976, Kimcoast moved for rejection and disaffirmance of the Grant Lease. Thereafter, on April 13, 1976, W. T. Grant was adjudicated a bankrupt, and a Trustee in bankruptcy was appointed. By order of this Court dated April 14, 1976, the Grant Lease was disaffirmed and rejected.

Shortly thereafter, Kimcoast was able to enter into a financially more favorable lease agreement dated April 20, 1976 with the S. S. Kresge Company (K-Mart Lease) by which it rerented the Premises for a term commencing July 16, 1976 and expiring on July 31, 1999, a date more than seven years beyond the expiration date of the original term of the Grant Lease. The Trustee vacated the Premises on April 23, 1976.

On September 15, 1976, Kimcoast filed a proof of claim against the estate of W. T. Grant asserting a general unsecured claim in the amount of $227,582.31 for damages allegedly sustained as a result of the rejection of the Grant Lease. The proof of claim was subsequently amended and reduced to its present amount in the sum of $57,197.22.

Although Kimcoast initially sought to prove its damage claim under section 63(a)(9) of the Bankruptcy Act (the Act) based upon the rejection of the unexpired Grant Lease, it now seeks to prove its claim

under section 63(a)(4) of the Act on the theory of an express contract. Kimcoast argues that sections 63(a)(4) and 63(a)(9) of the Act are not mutually exclusive. Accordingly, it now asks this Court to enforce paragraph 17a in the "REMEDIES" provision of the Grant Lease. Kimcoast contends that under the express terms of paragraph 17a it is presently entitled to payment of the monthly deficiencies in rent that accrued during the period after the Trustee stopped paying for the use and occupation of the Premises and before K-Mart commenced paying rent. Relying principally upon the authority of *Bedford Myrtle Corp. v. Martin*, 28 Misc.2d 33, 209 N.Y.S.2d 201, 203 (Sup.Ct.1960), Kimcoast argues that where a covenant in a lease agreement expressly provides a rule for measuring damages upon termination of the lease and for deciding when such damages are to be paid, that remedy must be "exclusively followed."

The Trustee argues that paragraph 17a of the Grant Lease is inapplicable to the facts of the case at bar and therefore provides no express remedy that must be followed. Additionally, he contends that Kimcoast could have elected to prove a claim for unpaid pre-petition rent under section 63(a)(4) of the Act but that it elected instead to rely on section 63(a)(9) of the Act when it asserted a claim for damages arising from the rejection of the Grant Lease. The Trustee reasons that the lease rejection was an anticipatory breach of an executory contract and as such it related back to the filing date of the bankruptcy petition. The Trustee argues that Kimcoast may attempt to prove a claim under section 63(a)(9) of the Act for actual future damages as of the filing date of the petition but that it may not prove a claim under section 63(a)(4) of the Act for damages for rental deficiencies past due that accrued after the filing date. The Trustee further contends that Kimcoast cannot prove that it sustained actual damages as a result of the rejection of the Grant Lease.

## I.

■ Under New York law, the liability that survives after the termination of a lease is for damages and not for rent. *Hermitage v. Levine*, 248 N.Y. 333, 337, 162 N.E. 97 (1928). Unless an express covenant in a lease provides the landlord with a more effective remedy, damages for rental deficiencies occurring as a result of the termination of the lease may only be ascertained at the end of the lease term. *Id.* at 338, 162 N.E. 97; *Bedford Myrtle Corp. v. Martin, supra.* The courts have upheld covenants expressly stipulating that the lessee is responsible for monthly payment of monthly rental deficiencies accrued after the landlord's reentry. *McCready v. Lindenhorn*, 172 N.Y. 400, 65 N.E. 208 (1902); *Malvin v. Klien*, 102 Misc.2d 1082, 424 N.Y.S.2d 1017 (Dist.Ct.1980); *Bedford Myrtle Corp. v. Martin, supra.* Such covenants allow the landlord to bring successive actions for past due rental deficiencies as they accrue; however, they do not entitle the landlord to recover for any future deficiencies. *Bedford Myrtle Corp. v. Martin*, 209 N.Y.S.2d at 204.

■ Kimcoast argues that paragraph 17a in the "REMEDIES" provision of the Grant Lease expressly entitles it to payment of the monthly rental deficiencies that accrued during the 2¾ month period that the Premises remained unrented after the Trustee had vacated. In pertinent part, paragraph 17a of the Grant Lease provides,

... *If any default of the Tenant* hereunder *shall continue uncorrected* for thirty (30) days after notice thereof from the Landlord, *the Landlord may by giving notice* to the Tenant

... (a) *terminate the lease, or (b) reenter* the demised premises by summary proceedings or otherwise, expelling the Tenant and removing all property therefrom and relet the premises at the best possible rent obtainable ... but the Tenant shall remain liable for the equivalent of all rent reserved herein less the avails of reletting, if any, after deducting therefrom the reasonable cost of obtaining possession of the premises ... *Any and all monthly deficiencies so payable by the*

*Tenant shall be paid monthly on the date herein provided for the payment of rent . . . (Emphasis added.)*

The language in the foregoing lease provision clearly contemplates the ordinary default situation upon non-payment of rent. This conclusion is bolstered by the fact that the similarly worded damage covenants upheld in *McCready v. Lindenhorn, supra, Malvin v. Klien, supra,* and *Bedford Myrtle Corp. v. Martin, supra* each operated in the normal default context upon non-payment of rent and not in a bankruptcy setting upon rejection of an unexpired lease. Kimcoast's reliance on paragraph 17a of the Grant Lease to assert a damage claim for the rental deficiencies that accrued during the 2¾ month period that the Premises remained unrented is therefore entirely misplaced.

This Court's conclusion that paragraph 17a of the Grant Lease is inapplicable to the present facts is confirmed by the presence of paragraph 17b, the so-called bankruptcy clause, also in the "REMEDIES" provision of the Grant Lease. The bankruptcy clause is devoid of any reference to the "survival" damage covenant contained in paragraph 17a. Nor does the bankruptcy clause contain a separate "survival" or "liquidated" damage covenant expressly setting a rule for ascertaining damages upon rejection or termination of the lease as a result of bankruptcy. Although paragraph 17b states that the landlord may terminate the lease if the tenant files a petition in bankruptcy or is adjudicated bankrupt, this provision is qualified by the statement that bankruptcy does not "affect the lease or permit its termination as long as the covenants on the part of the tenant are being performed."

Consequently, this Court finds that Kimcoast's claim in the amount of $56,595.44, for damages provable under section 63(a)(4) of the Act on the theory of an express contract, cannot be sustained under the express terms of the Grant Lease.

## II.

▮ The Trustee's motion for summary judgment disallowing and expunging Kim-coast's claim is predicated on the applicability of section 63(a)(9) of the Act, concerning anticipatory breach of executory contracts, to the facts of the case at bar. The Trustee notes that Kimcoast moved for and obtained the order rejecting and disaffirming the Grant Lease and that it subsequently filed a proof of claim on September 15, 1976 in which it asserted, *inter alia,* a general unsecured claim for "Damages for Rejection of the Lease." Additionally, in its Answers to Interrogatories dated May 29, 1980, Kimcoast stated that its claim "is for damages for injury resulting from the rejection of the lease and/or damages under covenants contained in the lease."

Section 63(c) of the Act provides that the rejection of an unexpired lease constitutes a breach of such lease that relates back to the date of the filing of the bankruptcy petition. Under section 63(a)(9) of the Act, a landlord of real property may prove a claim against the estate of the bankrupt debtor based upon anticipatory breach of executory contracts including unexpired leases. However, the landlord's claim is only allowable to the extent of the limitations contained in the proviso to section 63(a)(9). The proviso indicates, first, that "damages for injury resulting from the rejection of an unexpired lease . . . or for damages or indemnity under a covenant contained in such lease" are limited to

the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs . . .

Second, the landlord's claim for unpaid rent is limited to the amount that accrued up to that date without acceleration.

Accordingly, if the Grant Lease had contained a valid damage or indemnity covenant applicable in bankruptcy as the claimant alleged, Kimcoast could have elected to claim damages under that covenant. See *In re D. H. Overmyer Co., Inc.,* 10 CBC 17, 21 (Bankr.Ct.S.D.N.Y.1976). However, the amount of damages allowable would have been subject to the limitations set forth in the proviso to section 63(a)(9).

■ When a landlord's claim is based upon the rejection of an unexpired lease, he must prove that he has sustained actual damages. *City Bank Farmers Trust Co. v. Irving Trust Co.*, 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324 (1937); *C. D. Stimson Co. v. Porter*, 195 F.2d 410 (10th Cir. 1952); *In re D. H. Overmyer Co., Inc., supra.* Courts generally apply the rule articulated by the Supreme Court in *City Bank Trust Co. v. Irving Trust Co.*, 299 U.S. at 443, 57 S.Ct. at 297, that the landlord's measure of damages as a result of the breach is "the difference between the rental value of the remainder of the term and the rent reserved, both discounted to present worth." A presumption exists that the present value of the remainder of the term equals the rent reserved in the lease. *Palmer v. Connecticut Railway & Lighting Co.*, 311 U.S. 544, 558, 61 S.Ct. 379, 383, 85 L.Ed. 336 (1941); *Stimson v. Porter*, 195 F.2d at 413; *In re D. H. Overmyer Co., Inc.*, 10 CBC at 22. "In other words, it is presumed that in the event of a breach that the lessor will be able to re-rent the leased premises for the amount of the reserved rent without loss or damage." *C. D. Stimson v. Porter*, 195 F.2d at 413. However, the landlord may overcome the presumption by showing that he is unable to re-rent the premises under equally advantageous terms. *Id.; In re D. H. Overmyer Co., Inc., supra.*

In this case, Kimcoast cannot prove that it has sustained actual damages as a result of the rejection of the Grant Lease and the subsequent reletting of the premises to K-Mart. Instead, it has benefited. The minimum aggregate amount of rentals reserved in the K-Mart Lease through January 31, 1992, the expiration date of the original term of the Grant Lease, exceeds the aggregate amount of rentals reserved in the Grant Lease by more than $550,000. Accordingly, as shown in the Affidavit of Dominic Zani, sworn to on April 7, 1981 and filed in support of the Trustee's motion for summary judgment, the present discounted value of the K-Mart Lease through January 31, 1992 exceeds the rent reserved in the Grant Lease regardless of whether the discount rate used is 4% or 15% per annum.

In short, Kimcoast is enjoying a positive cash flow as a result of re-renting the Premises to K-Mart and has thereby mitigated any damages provable under section 63(a)(9) of the Act that could have ensued from the rejection of the Grant Lease.

As a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, the Trustee's motion to expunge and disallow Kimcoast's post-petition claim is hereby granted.

### III.

■ Kimcoast also asserts a claim against the estate of W. T. Grant in the sum of $601.78 for unpaid pre-petition rent and taxes accrued on October 1, 1975, the day immediately preceding the filing of the Chapter XI petition. The Trustee objects that Kimcoast has been paid the rent reserved under the Grant Lease for the entire month of October, 1975. The Trustee's objection is supported by the Affidavit of Dominic Zani sworn to April 7, 1981 and to which is annexed a copy of the cancelled rent check for October, 1975 in the amount of $18,484.58. Exhibit E to Zani Affidavit. Kimcoast's claim that W. T. Grant failed to pay rent for the one day in October, 1975 preceding the filing of the petition is supported by the Affidavit of Sam Mandelker sworn to April 24, 1981.

As a genuine triable issue of fact exists concerning the exact rental period covered by W. T. Grant's cancelled check, this Court, in accordance with Rule 56 of the Federal Rules of Civil Procedure, hereby denies summary judgment to both movants with respect to the pre-petition rent claim.

### IV.

In conclusion, this Court finds that claimant has presented no triable issue of fact sufficient to support its claim for damages in the amount of $56,595.44 and that the Trustee is entitled to judgment as a matter of law. However, a genuine issue as to a

material fact does exist with respect to Kimcoast's claim for pre-petition rental in the sum of $601.78.

This Court therefore grants the Trustee's motion for summary judgment disallowing and expunging Kimcoast's damage claim in the amount of $56,595.44. This Court denies both the Trustee's and Kimcoast's motions for summary judgment with respect to the pre-petition rental claim in the sum of $601.78. This Court directs the parties to set a date for a hearing on the remaining issue of fact.

It is so ordered.